UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-93 (JRT/TNL)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ANDREW NATHANIEL DAVID PIONTEK,

        Defendant.

**GOVERNMENT'S SENTENCING POSITION**

    The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, along with Jordan L. Sing and Melinda A. Williams, Assistant United States Attorneys, submits this memorandum in connection with the sentencing of defendant Andrew Nathaniel David Piontek. The United States seeks a sentence of 136 months' imprisonment followed by a 7-year term of supervised release along with mandatory restitution to Piontek's known victims and a $5,000 assessment to the Domestic Trafficking Victims' Fund.

## Piontek's Criminal Conduct

    Andrew Nathaniel David Piontek—a 51-year-old Caucasian man—had quietly cultivated a stable life. (PSR at ¶¶ 43, 54-56, 58-59.) Piontek inherited his home, earned an above-average income for over 16 years, and amassed a net worth of nearly $500,000. (*Id.* at ¶¶ 43, 59, 61.) Although single, Piontek is an experienced world traveler who often sought international romantic connections. (*Id.* at ¶¶ 43-44.) But

this prosecution reveals an entirely different lens for many of Piontek's actions abroad.

Piontek's international travel was a guise not only for sex tourism, but a self-admitted avenue through which Piontek potentially could realize his desire to have sex with a child. During these travels, Piontek actively searched the Internet for child prostitutes and negotiated the exchange of money for sex. (PSR at ¶ 9.) It was Piontek's penchant for this international travel that revealed—not once, but twice—his insatiable desire to fetishize children. (*Id.* at ¶¶ 7-10.) And Piontek's collection of child pornography tilts to the extreme. This prosecution represents Piontek's first time being held accountable for this conduct. (*Id.* at ¶ 38.)

On December 11, 2018, Customs and Border Protection at the Minneapolis/St. Paul International Airport searched Piontek's luggage as he returned from a trip to Thailand. (PSR at ¶ 7.) CBP found a metal canister that had a sock stuffed inside it. (*Id.*) CBP located a 128GB thumb drive inside a small plastic container that Piontek had hidden underneath that sock. (*Id.*) Piontek ultimately admitted that he hid the thumb drive because it contained child pornography. (*Id.*) Piontek subsequently admitted to downloading child pornography both in the United States and Thailand. (*Id.* at ¶ 8.) CBP seized seven electronic devices in Piontek's possession for additional examination and released Piontek. (*Id.* at ¶ 10.)

The subsequent forensic analysis of Piontek's devices confirmed the depth and depravity of Piontek's sexual attraction to children. Six of Piontek's seven devices contained child pornography, and law enforcement sifted through thousands of

concerning files. (PSR at ¶¶ 8, 11.) Ultimately, this examination verified 418 image files and 162 video files from 69 different series of known child pornography. (*Id.*)

But Piontek's collection of child pornography cannot accurately be quantified solely by its volume. Piontek's collection was carefully curated and highly specialized. (PSR at ¶ 11.) The file names in Piontek's collection often included shorthand notations for child pornography with callouts for the age of the abused children and a detailed description of the displayed sex acts. (*Id.*) Piontek collected extremely masochistic child pornography that fetishized incest and involved children as young as three years old. (*Id.*) This content includes overt depictions of rape and prepubescent children being repeatedly penetrated in every orifice. (*Id.*)

Piontek's iPhone 7 raised particular cause for concern. (PSR at ¶ 9.) In July 2017—while in in Kiev, Ukraine—Piontek used this iPhone to search the Internet for "where to find child prostitutes in kieve ukraine" and "where to find child sex in kiev ukraine." (*Id.*) The iPhone 7 also contained numerous chats in which Piontek attempted to negotiate purchasing sex. (*Id.*) This led law enforcement officers to research Piontek's history of international travel. (Dkt. 11 at 8.) In the last decade alone, Piontek took 24 international trips primarily to Ukraine, Thailand, and the Dominican Republic. (*Id.*) These locations are well known to law enforcement for harboring a more readily-accessible marketplace of child exploitation. (*Id.*) Piontek's favorite destinations, iPhone search history, and extensive collection of child pornography shed considerable light on his international travel activities.

Despite his December 2018 encounter with law enforcement—and as law enforcement examined his electronic devices—Piontek again travelled abroad. (*Id.*) On March 9, 2019, Piontek returned to the United States from a multi-week trip abroad. (*Id.*) Pursuant to a criminal complaint, law enforcement officers arrested Piontek in Chicago. (Dkt. 3.) Law enforcement officers also seized two new electronic devices Piontek possessed. (PSR at ¶ 10.) During a subsequent interview, Piontek admitted that he had continued to access child pornography, but denied that his new electronic devices contained child pornography. (*Id.*) Piontek lied. Both of the seized devices contained images and videos of child pornography. (Dkt. 38 at ¶ 2.) However, Piontek was more candid than in his first interview. Piontek specifically outlined his familiarity with the world of child pornography and detailed his use of the anonymous Tor Network browser to cultivate his collection of child pornography. (PSR at ¶ 10.) Piontek also admitted that he tailored his international travel to locations known for sex tourism. (Dkt. 11 at 15.) Piontek considered it an added bonus that the stars may align in one of these locations to present him with the opportunity to engage in sex with a child. (*Id.*)

On April 1, 2019, a grand jury returned a two-count indictment against Piontek for interstate transportation of child pornography and possession of child pornography. (Dkt. 13.) On September 5, 2019, pursuant to a plea agreement, Piontek pleaded guilty to interstate transportation of child pornography. (Dkts. 37-38.)

## The Presentence Report

The government agrees with the facts and conclusions of the PSR, which result in a Guidelines range of 121 to 151 months' imprisonment based on a total offense level of 32 and a criminal history category of I. (PSR at ¶ 66.) It does not appear that there any outstanding disputes regarding the PSR that affect the applicable Guidelines range.[1] (PSR at A.1.)

## The Appropriate Sentence

The government asserts that a sentence of 136 months' imprisonment followed by a 7-year term of supervised release is appropriate to reflect the seriousness of this offense, to provide Piontek with just punishment, and to deter Piontek and others from engaging in similar behavior. Piontek should pay mandatory restitution to the requesting victims of his offense. Finally, given his assets—which financed the international travel that assisted his conduct—Piontek should be required to contribute $5,000 to the Domestic Trafficking Victims' Fund.

Piontek's case is not an isolated one of receipt or possession. Piontek used his assets to finance international travel, engage in sex tourism, and curate a particularly violent collection of prepubescent child pornography. Piontek's collection is littered with file names that describe very young children enduring unimaginable suffering. By way of a few illuminating examples, Piontek's collection included files

---

[1] Piontek appears to object to two factual assertions in the PSR. Because it does not appear that these factual issues will affect sentencing, the government respectfully requests that the Court determine that a ruling on these issues is not necessary. *See* Fed. R. Crim. P. 32(i)(3).

entitled "8yo_JULIA SUMMER ASS FUCK, BROTHER AND DAD & cum in ass (great!!!)" and "10yo . . . Fullsex_Spank Child Sado-Slave." (PSR at ¶ 11.) These file names leave little to the imagination. Piontek sought his sexual gratification at the expense of the suffering these children endured. And Piontek appears unable to control his compulsions. Despite being caught in December 2018, Piontek purchased new electronic devices and left on another multi-week international trip. During this trip, and despite his denials, he again sought out child pornography and engaged in the international transportation of it.

Aside from these uncontrollable compulsions, Piontek also appears to pose an affirmative danger to children. Piontek admitted not only that sex tourism motivated his international travel, but also that he knowingly selected locations known for their marketplace in child exploitation. (Dkt. 11 at 14-15.) Piontek fantasized about the potential of having sex with a child and selected international destinations in hopes of potentially realizing that fantasy. (*Id.*) Piontek's actions demonstrate his desire to make good on this fantasy. Piontek not only paid for sex during his travels, but actively searched the Internet for child prostitutes during a 2017 visit to Kiev, Ukraine. (PSR at ¶ 9.)

Piontek's history and characteristics fail to provide any clarity or mitigation for his conduct. Piontek appears to have benefitted from a middle-class upbringing and all the advantages that stem from obtaining a bachelor's degree. (PSR at ¶¶ 42-43.) By age 18, Piontek lived abroad. (*Id.* at ¶ 43.) Piontek travelled through Europe following his graduation from college. (*Id.*) He proceeded to enter the

6

workforce, maintain stable employment, and achieve financial security. (*Id.* at ¶¶ 58-61.) Piontek inherited his home and used his financial freedom to extensively travel the world. (*Id.* at ¶¶ 43-44.) Piontek denies having any medical issues or experiences with substance abuse. (PSR at ¶¶ 51, 53.) Although he has led a relatively solitary life, it does not appear that Piontek suffered from any particular harm or abuse that explains his conduct. (PSR at ¶ 52.) Instead, it appears Piontek simply found enjoyment in the fact that international travel provided easier access to child pornography and potential opportunities for child sex abuse. (Dkt. 11 at 14-15.) These realities—along with the fact that Piontek's home is adjacent to an elementary school (*id.* at 24-25)—underscore the government's request for a mid-range sentence followed by a 7-year term of supervised release.

By Piontek's own admission, his "greatest stressor" is "dealing with the financial ramifications of his arrest and finding a way to keep his home." (PSR at ¶ 52.) But these concerns are secondary to remediating Piontek's harm to his victims and the public. Piontek is obligated, as he acknowledged in his plea agreement (Dkt. 38 at ¶ 11), to pay mandatory restitution to his victims. *See* 18 U.S.C. §§ 2259, 3663A. Piontek agreed to pay "no less than $3,000 to each victim of his crime." (Dkt. 38 at ¶ 11.) To date, two identified victims have submitted claims totaling $15,000 for harm resulting from Piontek's conduct.[2] (PSR at ¶ 13.) The government intends to

---

[2] It appears two additional victims have come forward since the issuance of the PSR. The government provided the documentation substantiating these victims' claims to defense counsel. The government understands that Piontek is negotiating directly with victims' counsel regarding the requested restitution.

seek restitution for these victims and, absent a stipulation, will substantiate its request at the sentencing hearing. Also, absent a finding of indigence, Piontek must pay a $5,000 assessment pursuant to the Justice for Victims of Trafficking Act of 2015 to help fund the Domestic Trafficking Victims' Fund. 18 U.S.C. § 3014(a).[3] This assessment is particularly appropriate here. Piontek is far from indigent and his conduct undeniably affected more than the few identified victims seeking restitution.

The only ameliorating circumstance here is Piontek's reaction to being charged with his crimes. Despite his inability to voluntarily break the cycle of his behavior in December 2018, Piontek began the process of accepting responsibility following his arrest. And instead of contesting the evidence, Piontek decided to plead guilty. Piontek's written statement accepts responsibility and does not resort to blaming others or offering excuses. This contrition informs the government's assessment that a mid-range sentence is appropriate. But Piontek must recognize his work is far from over. Piontek admits that he previously recognized the harmful nature of his actions, but was unsuccessful in ceasing his conduct. (PSR at ¶¶ 16, 52.) Piontek must utilize every available resource to understand his compulsions and do everything within his control to ensure he never again resorts to this behavior.

## Conclusion

To the extent that the Guidelines create an analytical spectrum, Piontek falls somewhere in the middle. Piontek exploited his privilege and economic freedom to

---

[3] The PSR suggests this assessment expired on September 30, 2019. (PSR at ¶ 74.) The government is unaware of such an expiration, as the statute appears to apply through September 30, 2021. *See* 18 U.S.C. § 3014.

extensively travel abroad because it presented him opportunities to engage in child exploitation. The United States respectfully submits that a sentence of 136 months' imprisonment followed by a 7-year term of supervised release comports with the United States Sentencing Guidelines and the factors of Title 18, United States Code, Section 3553(a). Such a sentence reflects the seriousness of Piontek's conduct, promotes respect for the law, and hopefully deters others from committing similar offenses. Such a sentence also accounts for Piontek's decision to accept responsibility for his conduct and commit to his own potential for rehabilitation. Finally, Piontek should be ordered to pay a mandatory restitution to his known victims along with a $5,000 assessment to the Domestic Trafficking Victims' Fund.

Dated: January 6, 2020

Respectfully Submitted,

ERICA H. MACDONALD
United States Attorney

*/s/ Jordan L. Sing*

BY: JORDAN L. SING
Attorney ID No. 393084MN

MELINDA A. WILLIAMS
Attorney ID No. 491005DC

Assistant United States Attorneys